NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

CIVIL ACTION NO. 07-CV-59-HRW

ROBERT ANTHONY HAYES                                                          PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

BRIAN PATTON, *Warden*                                                        RESPONDENT

The petitioner, Robert Anthony Hayes, who is confined in the Federal Correctional Institution in Ashland, Kentucky ("FMC-Lexington"), has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2241. The named respondent is Brian Patton, the warden of FCI-Ashland.

As the petitioner has paid the $5.00 filing fee, this matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. §1915(e)(2), a district court has authority to dismiss a case at any time if it determines the action: (I) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The petitioner alleges in his §2241 petition that in September, 2006, the Bureau of Prisons ("BOP") formulated a new Policy Statement which has adversely impacted his custody classification. Specifically, he complains that the application of the BOP's newly adopted Policy Statement was "arbitrary" and has caused him to go from "camp" status to "medium" status.

First, the petitioner challenges the validity of the new BOP Policy Statement, arguing that it was implemented absent the "notice and comment" provisions of the Administrative Procedure Act, 5 U.S.C. §507. Second, he argues that he enjoyed a protected liberty interest in his prior custody classification, and that application of the new BOP Policy Statement to him violates the Due Process Clause of the Fifth Amendment of the United States Constitution.

## RELIEF REQUESTED

Petitioner seeks an order directing the BOP to reclassify him to the lower custody level which he had been assigned prior to the adoption of the BOP's new Policy Statement.

## PETITIONER'S CRIMINAL CONVICTION

The petitioner states that in October, 2000, he was convicted in the United States District Court for Western District of Kentucky (Louisville Division) of the following federal offenses: (1) Engaging in Continuing Criminal Enterprise (violation of 21 U.S.C. §848); (2) Conspiracy to Possess and Distribute Cocaine (violation of 21 U.S.C. §846); (3) Conspiracy to Possess and Distribute Marijuana (violation of 21 U.S.C. §846); and (4) various Money Laundering offenses (violation of 18 U.S.C. §1956). *See United States of America v. Robert Hayes*, 3:99-CR-00026 (Hon. Charles R. Simpson, presiding) ("the Trial Court").

Petitioner received a 235-month sentence, which was ordered to run consecutive to another state court conviction.[1] The Trial Court also imposed a 5-year term of supervised release. The Sixth Circuit affirmed the conviction. *See United States of America v. Robert Hayes*, 9 Fed. Appx. 365, 2001 WL 522420 (6th Cir., May 9, 2001) (not selected for publication in the Federal Reporter).

ALLEGATIONS OF THE PETITION

Petitioner states that the BOP had originally classified him as a "Plus 8 Base Offense" custody level. He alleges that in September, 2006, the BOP issued a new Policy Statement, PS5100.08, entitled Inmate Security Designation and Custody Classification. Petitioner claims that the BOP's new policy for determining custody level and security classification adversely affects prisoners (like himself) who have already reached a camp or community custody status. In Petitioner's case, his security classification increased to a "Plus 17 Base Offense" after the BOP's applying the new policy to him. He complains that his new custody/security classification prevents him from being placed in a lower security level prison camp.

Petitioner alleges that it took him five (5) years to achieve the custody status of "8 Plus" as reflected on the December 22, 2005 "MALE CUSTODY CLASSIFICATION FORM" [Record Nos. 2-13]. As the petitioner correctly notes, the subsequent "MALE CUSTODY CLASSIFICATION FORM" prepared by the BOP does, in fact, reflect a higher security level (Base 17). [*See* Record Nos. 2-12.]

---

[1] Petitioner states that the sentence was handed down on October 18, 2000, but Docket Sheet from the Trial Court indicates that the Criminal Judgment was actually rendered on May 19, 2000. [*See* Trial Court Docket Entry #358, Case No. 99-CR-00026-CRS].

3

## EXHAUSTION

The petitioner has filed documents which demonstrate that he fully exhausted the three-step administrative remedy process required by 28 C. F.R. §542.13 -15. At all levels, the BOP denied the petitioner's request to be re-classified according to the BOP's pre-September, 2006 Policy Statement. [*See* Record No. 2-7 (Warden's Response); Record No. 5-1 (Mid-Atlantic Regional Office Response ("MARO")); and Record No. 2-11, p.3 (Central Office Response).]

At all levels of the administrative appeal process, BOP officials upheld the application of the its new Policy Statement. Warden Patton noted that some inmates, such as Petitioner Hayes, were adversely affected as a result of the new policy's criteria. Warden Patton informed the petitioner, however, that because his Unit Team had determined that he could be effectively managed at a Low Security facility, it had requested a "Management Variable for Lesser Security." The Warden refused to disregard the new Policy Statement and apply older criteria.

On February 3, 2007, K. M. White, Regional Director of the MARO, stated that the new PS 5100.08 is consistent with the BOP's statutory authority to formulate policy considerations affecting federal prisoners. White explained that under 18 U.S.C. §3621(b), the BOP is authorized to place inmates in the most appropriate security level institution.[2] White supported

---

[2]

Title 18 U.S.C. §3621(b) confers qualified discretion on the BOP to designate a prisoner's place of imprisonment. The statute provides in relevant part:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau..., considering-

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

4

the Warden's decision to apply the newly implemented security and custody classification Program Statement.

On April 27, 2007, Harrell Watts, Administrator of the National Inmate Appeals, denied the petitioner's final BP-11 appeal. He supported the previous decisions of Warden Patton and Director White and denied the request to revert to the BOP's pre-September, 2006 custody and security designation criteria. Watts states as follows:

> Review of the record reveals you are classified as required by Program Statement 5100.08, Security Designation & Custody Classification Manual. An inmate's classification is continually in flux during their prison term. The initial classification is based upon information known to the Bureau of Prisons primarily through information provided in the PreSentence Report. As the inmate's prison term progresses, the values from which the classification is derived change depending on the inmate's conduct, program participation, family communication, living skills, etc.

[Record No. 2-11]

Watts concluded these comments by stating that Petitioner Hayes' security designation had been "negatively impacted by the commission of a moderate severity prohibited act on November 23, 2005." [Record No. 2-11] Watts provided no further details as to the disciplinary

---

(4) any statement by the court that imposed the sentence-

    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

5

violation, but informed the petitioner that at his next program review (October, 2007), the incident report will "no longer be considered." [*Id.*]

## DISCUSSION

To the extent that Harrell Watts explains that the BOP will not consider the petitioner's disciplinary infraction in determining his security status/designation after October, 2007, the Court could very well conclude that the petitioner's constitutional claims raised here will soon be moot. Since, however, there is a possibility that for some reason the program review might not disregard the impact of November, 2005, the Court will address the merits of the petitioner's challenges at this time.

### 1. Due Process Claim

Due process rights are only triggered by the deprivation of a legally cognizable property interest. *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003). Thus, the plaintiff must establish that he has a legally protected interest in not having his security designation reevaluated or reclassified by the BOP.

Petitioner Hayes' due process claim lacks merit because prisoners generally do not have a due process liberty interest in their placement and classification while incarcerated. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S.Ct. 274 (1976); *see also Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 127 (1976) (inmates have neither protected liberty interests nor property interests in custodial classification).

To establish the existence of a liberty interest, a prisoner must show that he has been subjected to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life," *see Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293 (1995), or that the government's

6

action "will inevitably affect the duration of his sentence." *Id.*, 515 U.S. at 487. Hayes has made neither showing.

Under §3621, the Attorney General of the United States has delegated discretionary decisions, as to federal prisoners' placement and classification while incarcerated, to the Director of the BOP. Congress has given federal prison officials full discretion to control the conditions of confinement, and prisoners have no constitutional entitlement to invoke due process claims. *See DeLand v. Attorney General of the United States*, 2006 WL 3337465, *3 (N.D. Ohio, November 16, 2006) (Only Westlaw Citation currently available). Accordingly, the BOP could establish new, different and/or harsher criteria for evaluating the effect of a disciplinary infraction on a federal prisoner's security designation. The fact that the new criteria adversely impacted on Petitioner Hayes because of his 2005 disciplinary charge does not render the September, 2006 Policy Statement invalid or unconstitutional.[3]

As the Supreme Court stated in *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L. Ed.2d 813 (1983), "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. [And] ... an

---

[3]
Even cases which evolved before the Supreme Court's *Sandin* decision adopted the viewpoint that prisoners have no inherent constitutional right to placement in any particular prison, security classification, or housing assignment. *See Meachum v. Fano*, 427 U.S. 215, 225, 96 S. Ct. 2532 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976); and *Marchesani v. McCune*, 531 F.2d 459.

*See also Mader v. Sanders,* Ashland Civil Action No. 02-CV-00067-HRW, a case which the undersigned decided on June 11, 2002. *Mader* involved a somewhat similar claim by a federal inmate seeking transfer to a lower security facility. The undersigned rejected the §22241 petition, finding that the prisoner had no due process liberty interest in his placement and classification while incarcerated. The Court concluded that Mader's Fifth Amendment due process rights were not violated by the BOP's' refusal to transfer him to a lower security camp facility with other inmates who had the same custody classification. On appeal, the Sixth Circuit affirmed. *See Mader v. Sanders*, Fed. Appx. 869, 871, 2003 WL 21259676, **1 (C.A.6 (Ky.), May 29, 2003).

expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id*. at 250 n.12.

Thus, the argument that Petitioner Hayes was denied due process of law under the Fifth Amendment does not state a constitutional claim. That claim will be dismissed.

## 2. Alleged Violation of the APA

The petitioner claims that the BOP's adoption of the 2006 Policy Statement violates the APA's "notice and comment" provisions which require the publication of any "proposed rule making." *See* 5 U.S.C. 553(b).[4] The APA exempts from notice and comment interpretative rules or general statements of policy. *See* 5 U.S.C. § 553(b)(3)(A).

By issuing a policy statement, an agency simply lets the public know its current enforcement or adjudicatory approach. *Syncor Intern. Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir.,1997). The agency retains discretion and authority to change its position, even abruptly, in any specific case because change in its policy does not effect the legal norm. *Id*. Policy statements are binding on neither the public nor the agency. *Id*. (citing cases).[5]

---

[4] The "notice and comment" requirement allows those with interests affected by rules the chance to participate in the promulgation of the rules. As the D.C. Circuit explained in *National Soft Drink Assn. v. Block*, 721 F.2d 1348, 1353 (D. C. Cir.1983), the §553 requirements ensure fair treatment for persons to be affected by regulations.

[5] An interpretative rule, on the other hand, typically reflects an agency's construction of a statute that has been entrusted to the agency to administer. *Id*. "The legal norm is one that Congress has devised; the agency does not purport to modify that norm, in other words, to engage in lawmaking. The agency does not claim to be exercising authority to itself make positive law, but instead construes the product of congressional lawmaking "based on specific statutory provisions." (*Id*.) (citing *United Technologies Corp. v. United States EPA*, 821 F.2d 714, 719 (D.C. Cir.1987)).

Here, the challenged action is the BOP's revised policy statement, which is expressly exempt from the "notice and comment" requirements of the APA.  Even construing the new Policy Statement broadly enough for it to fall under the umbrella of a "rule," the Sixth Circuit has upheld the BOP's action - - under similar circumstances - - as merely adopting "interpretive rules."[6] *See Dismas Charities, Inc. v. United States*, 401 F.3d 666, 680 (6th Cir.2005) (change in BOP policy regarding placement of federal offenders in Community Corrections Centers, based on the legal interpretation that the § 3621 limited the BOP's authority, was an "interpretive rule" and, as such, not subject to notice and comment rulemaking under the APA.).

Given the Sixth Circuit's ruling in *Dismas*, this Court is unable to conclude that the BOP's September, 2006 Policy Statement, affecting security classifications, violates the APA.

## CONCLUSION

Accordingly, **IT IS ORDERED** that the petitioner's §2241 petition is **DENIED** and that this proceeding [07-CV-59-HRW] is **DISMISSED WITH PREJUDICE**.  Judgment shall be entered contemporaneously with this memorandum opinion in favor of the respondent.

This July 2, 2007.



Signed By:
*Henry R Wilhoit Jr.*
United States District Judge

---

[6] The rulemaking requirements of §553(a) of the APA do not apply to "interpretative rules."

9